James A. RICHTER, Plaintiff–Appellant,

v.

HOOK–SUPERX, INC. and Revco D.S., Inc., Defendants–Appellees.

No. 97–1909.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1998.

Decided April 27, 1998.

Wayne O. Adams, III (argued), Johnson, Smith, pence, Densborn, Wright & Heath, Indianapolis, IN, for Plaintiff–Appellant.

Kim F. Ebert (argued), Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Defendants–Appellees.

Before CUMMINGS, COFFEY, and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

In July 1994, defendant Revco Drug Stores, Inc. ("Revco") acquired defendant Hook–SupeRx, Inc. ("HSI"). Plaintiff James Richter had been employed by HSI and its predecessor Hook Drug Stores ("Hook") for 29 years. Revco decided not to retain Richter as Human Resources Manager after the acquisition. At the time of this decision, Richter was 52 years old and his replacement was 45 years old. Richter brought suit against Revco and HSI[1] under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., alleging that Revco and HSI unlawfully discriminated against him on account of his age when Revco terminated him and replaced him with a manager seven years younger.

On March 18, 1997, the district court granted summary judgment in favor of Revco and HSI. Finding no issue of material fact, we affirm.

## I. Facts

Richter's employment history with Hook began in 1965 when Richter was hired by Hook as a Management Trainee. From 1966 to 1967, he served as an Employment Supervisor; from 1967 to 1969, he worked as Director of Personnel; and from 1969 to 1981, he was an Assistant Vice President. In 1981, Richter became Hook's Vice President of Human Resources. In 1986, HSI was formed upon Revco's acquisition of Hook and assets of SupeRx Drugs Corporation ("SupeRx"). Richter remained Vice President of the Hook Division of Human Resources and was supervised by Robert Griffith, HSI's Vice President of Human Resources. In 1991, HSI decided to eliminate Richter's Vice President position and made him Director of Human Resources for the Hook Division. In July 1992, Richter was reassigned to the position of Manager of Human Resources at the Indianapolis Distribution Center. He held this position until July 15, 1994.

In April 1994, Revco received board approval for its acquisition of HSI, which was to become effective on July 15, 1994. Having decided to retain human resources personnel at the Indianapolis Distribution Center, Revco began exploring which HSI employees to retain. In May 1994, the decision was made not to retain Richter, and Revco began interviewing other HSI employees to fill the Human Resources Manager position. Three Revco employees were primarily involved in the selection of the Human Resources Manager at the Indianapolis facility: David Lynn, Revco's Vice President of Distribution; Augustine Simone, Revco's Director of Human Resources for Distribution; and Douglas Coffey, Revco's Senior Vice President of Human Resources. Lynn basically delegated the decision to Simone and Coffey, who relied on personal contacts with Richter in determining whether to retain him. Revco did not establish written criteria for the position, did not review the personnel files or performance evaluations of candidates, and did not use a formal process in assessing whether to retain Richter.

In April 1994, Coffey met with Griffith[2] and other HSI officials to discuss HSI per-

---

1. As did the district court, we also question why HSI is a party to this litigation. The decision not to retain Richter was undisputably made by Revco, and plaintiff offers no principle by which HSI can be held liable for Revco's decision. However, because we find that Revco is entitled to summary judgment, we need not resolve this issue on the merits.

2. Griffith, who was 46 years old on July 14, 1994, was not retained by Revco following the acquisition.

sonnel whom Revco might consider for employment after the acquisition. Griffith told Coffey that his personal opinion was that Richter "was not a strong performer." Coffey inferred from the conversation that Richter was not as actively involved in the business as Griffith would have expected him to be. On April 14, 1994, Coffey personally met with Richter at the Indianapolis Distribution Center. After touring the facility together and meeting in Richter's office, Coffey formed the following impressions of Richter: he did not know many people in the facility; he was more of an "administrative" human resources manager than necessary at the facility; he did not appear to be significantly involved in job interviews, employee appraisals, or employee training. In addition, Coffey had expected that Richter, as Human Resources Manager, would have played an active role in union avoidance training and was surprised that HSI used outside consultants to perform that function.

Simone met with Richter on or about April 21, 1994, and again in May 1994. Based upon conversations with Richter discussing the Indianapolis operation, the human resources program in place there, and Richter's work experience, Simone formed the impression that Richter was delegating effectively, but was not using a hands-on approach to human resources activities. Coffey agreed that Richter was not the type of hands-on manager that Revco desired. After being advised of these concerns, Lynn agreed that Revco was looking for a manager more actively involved in human resources activities and that Richter was not the right person for the job. In June 1994, Simone advised Richter that he would not be retained following the acquisition. Richter was 52 years old at the time.

After deciding not to retain Richter, Revco began looking for other candidates among HSI employees who would take a more active role in human resources activities. Revco interviewed Stan McGrew, who was recommended by individuals at HSI, but did not offer him the position, finding him to be sarcastic, lacking a positive attitude, and seemingly more comfortable working with management personnel and unlikely to be well-received by warehouse employees. McGrew, who was 40 years old at the time, was the youngest of the three individuals considered for the Human Resources Manager position.

Revco then contacted John Kellner, who was 45 years old at the time, to interview for the position. Kellner was eventually chosen as the Human Resources Manager.

Due to the acquisition by Revco, 18 of the approximate 21 HSI human resources managers or officers lost their jobs. Of those who were not retained, all but one were younger than Richter, and nine were under the age of 40. Of the three HSI human resources managers (including Kellner) who were retained by Revco, two were over the age of 40 and thus were members of the protected class.

## II. Analysis

We review a district court order granting summary judgment *de novo. Geier v. Medtronic, Inc.,* 99 F.3d 238, 240 (7th Cir.1996). We affirm a grant of summary judgment when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202. We apply the summary judgment standard with particular care in employment discrimination cases, which often turn on the issues of intent and credibility. *Geier,* 99 F.3d at 240.

The ADEA makes it illegal for an employer to discharge, refuse to hire, or otherwise discriminate against an employee over 40 years old because of that individual's age. 29 U.S.C. §§ 623(a), 631(a). To succeed in an ADEA claim, a plaintiff must establish that he would not have received adverse treatment but for his employer's motive to discriminate on the basis of his age.

*Fuka v. Thomson Consumer Electronics,* 82 F.3d 1397, 1402 (7th Cir.1996).

■ Plaintiff may establish a case of age discrimination in order to avoid summary judgment in one of two ways. First, he may present "enough evidence (whether direct or circumstantial) to raise a genuine issue concerning the employer's motivation in carrying out the challenged employment action." *Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 889 (7th Cir.1997). Alternatively, he may avoid summary judgment by using the indirect, burden-shifting approach set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668. *Hartley,* 124 F.3d at 889.

■ Because Richter presented no evidence (direct or circumstantial) demonstrating that his termination was a result of intentional age discrimination, we analyze the case under the *McDonnell Douglas* burden-shifting approach. Under that approach, Richter must establish a prima facie case of age discrimination by demonstrating that (1) he was a member of the protected class (age 40 or over); (2) he was performing his job to his employer's legitimate expectations; (3) despite his performance, he was discharged, not hired or promoted, etc.; and (4) younger, similarly situated employees were treated more favorably. *Fuka,* 82 F.3d at 1404. If Richter should succeed in establishing a prima facie case, "a rebuttable presumption of discrimination arises," and the burden shifts to Revco to present a legitimate, nondiscriminatory reason for his termination. *Id.* Once Revco offers such a reason, the presumption of discrimination dissolves, and the burden shifts back to Richter to establish that the proffered reason is a pretext for discrimination. *Id.*

We agree with the district court that Richter established the above three elements of a prima facie case of age discrimination: he was 52, was performing his job sufficiently, and was discharged from employment. Although the district court found that Richter satisfied the fourth element, the court did not have the benefit of this Court's decision in *Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, decided on September 5, 1997, in reaching its determination. Based on *Hartley,* we

conclude that Richter failed to satisfy the fourth prong of the *McDonnell Douglas* approach and thus cannot establish a prima facie case of age discrimination.

■ In *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433, the Supreme Court clarified the scope of the fourth prong under *McDonnell Douglas,* concluding that a plaintiff must show that he was replaced by someone "substantially younger," although not necessarily outside the protected class. *Id.* at 313, 116 S.Ct. at 1310. While not requiring a plaintiff to show that he was replaced by someone younger than 40 to make out a prima facie case, the Court did require that the plaintiff establish that he was replaced by someone not insignificantly younger, concluding that "[i]n the age-discrimination context, [an inference that an employment decision was based on a discriminatory criterion] can not be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* The Court adopted this formulation in order to avoid the illogical result under which an inference of discrimination would not arise where a 56–year–old was replaced by a 40–year–old because both were in the protected class but an inference of discrimination would arise where a 40–year–old was replaced by a 39–year–old because a protected class member was replaced by an individual outside the protected class. *Id.* at 312, 116 S.Ct. at 1310. The Court reasoned that the "fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *Id.* at 313, 116 S.Ct. at 1310. Therefore, to satisfy the fourth prong under *McDonnell Douglas,* a plaintiff must demonstrate that he was replaced by a younger person, as long as the replacement is not "insignificantly younger."

The question, then, is what qualifies as substantially or significantly younger. In *Hartley,* we addressed this issue. Recognizing that the answer depends to some degree on the facts and circumstances of a given case, we held that a ten-year age difference between the plaintiff and her replacement is

presumptively substantial. *Hartley*, 124 F.3d at 893 ("[t]en years is a reasonable threshold establishing a 'significant' and 'substantial' gap, which is what *O'Connor* demands"). However, we noted that the line drawn "is not so bright as to exclude cases where the gap is smaller but evidence nevertheless reveals the employer's decision to be motivated by the plaintiff's age." *Id.* Thus we held that "[i]n cases where the disparity is less, the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant."[3] *Id.*

■ Based on *Hartley*, we find that Richter was not replaced by someone "substantially younger." Richter, 52 years old, was only seven years older than his replacement Kellner, who was 45 years old. As we noted in *Hartley*, a seven-year age difference is a presumptively insubstantial gap. Furthermore, the record reveals no evidence that Revco viewed the age of 52 to be significant. In fact, Revco also did not hire the youngest of the three candidates considered for the job, Stan McGrew, who was 40 years old at the time of the decision.

■ Even if this age disparity were substantial, it would mean only that plaintiff had set out a prima facie case of discrimination. Under *McDonnell Douglas*, the burden then would shift to the defendants to articulate a legitimate, nondiscriminatory reason for Richter's discharge. If defendants are successful, the burden would shift back to the plaintiff to demonstrate that defendants' proffered reason is a pretext for age discrimination. Therefore, even if Richter had established a prima facie case of discrimination, summary judgment would still be appropriate under *McDonnell Douglas* because defendants offered legitimate reasons for Richter's discharge which Richter was unable to effectively call into question.

As the district court noted, defendants satisfied their burden of articulating legitimate, nondiscriminatory reasons for discharging Richter by stating that their decision not to retain him was based upon the following:

1) Bob Griffith's comment to Coffey that Richter was "not a strong performer," and Coffey's belief, based upon Griffith's comments, that Richter was not as actively involved in HSI's business as Griffith desired;

2) Revco's belief, based upon Simone's and Coffey's personal contact with Richter, that Richter tended to delegate important Human Resources functions and did not have the desired quality of a "hands-on" manager; and

3) Revco's belief, based upon Simone's and Coffey's personal contact with Richter, that Richter was not sufficiently involved in union avoidance and labor relations functions.

*Richter v. Revco D.S., Inc.*, 959 F.Supp. 999, 1007 (S.D.Ind.1997).

■ In order to defeat defendants' motion for summary judgment, Richter must demonstrate that these reasons are a pretext for age discrimination. "[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992); see *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 304 (7th Cir.1996) (stressing that "it is incumbent upon us to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives"). Therefore, Richter "lose[s] if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." *Hartley*, 124 F.3d at 890; see *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997) (quoting *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 559 (7th Cir. 1987), certiorari denied, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486) ("a reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination"). This Court has defined

---

**3.** However, we did note that in such a situation, the employee's case likely would be one based on direct evidence, and thus the age disparity required by the indirect burden-shifting *McDonnell Douglas* approach would be less relevant. *Hartley*, 124 F.3d at 893.

pretext as "more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action,' " *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (quoting *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995)), reasoning that "[i]f the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn." *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990). A plaintiff can prove that an employer's proffered reason is pretextual "(1) by showing that a discriminatory reason more likely than not motivated the employer (i.e., that the company's proffered reasons were not the sole determining factors and, therefore, age discrimination might have been a determining factor in addition to the proffered reasons); or (2) that the employer's proffered explanation is unworthy of credence." *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir.1994), certiorari denied, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313. In essence, the plaintiff must demonstrate either that the real reason for his termination was age or that the stated reason is unworthy of belief. *Id.*

For the reasons discussed below, we agree with the district court's conclusion that Richter failed to present evidence demonstrating that Revco's proffered reasons are unworthy of belief or that age bias more likely motivated Revco's decision.

### A. After–Acquired Evidence Does Not Lead to the Conclusion that Revco's Reasons are Pretextual

 To provide additional support for Revco's asserted legitimate nondiscriminatory reasons for terminating Richter, Revco refers to facts regarding Richter's pre–1994 job performance. However, because Revco did not rely upon and was not even aware of this information at the time it made its decision, this evidence could not have served as the basis for its decision not to retain Richter. While Revco cannot rely upon such "after-acquired evidence" to support its reasons for terminating Richter, reliance on such evi-

dence does not indicate that those reasons are pretextual. As long as Revco's reasons are supported by facts known at the time of the decision, it does not need to further bolster its case with after-acquired evidence.

 Revco also offered comparisons of Richter's qualifications with those of his successor, John Kellner, in order to support its decision not to retain Richter. However, such comparisons could not have served as the basis for Revco's determination not to retain Richter because Revco decided not to retain him before it even considered other candidates. Therefore, we will not consider these comparisons as support for Revco's asserted reasons for terminating Richter but again note that the fact that Revco attempted to use such comparisons does not demonstrate that Revco's reasons for terminating Richter are pretextual.

### B. Richter Offers No Evidence that Revco's Proffered Reasons are Unworthy of Belief

Richter contends that Revco's asserted reasons are unworthy of credence because (1) Revco did not actually rely on Griffith's comment that Richter was not a strong performer, (2) Revco had no basis in concluding that Richter was not a "hands-on" manager, and (3) Revco did not view involvement in union avoidance as significant and, even if it did, delegation of such activity should not be considered a deficiency.

#### 1) *Griffith's report that Richter was not a strong performer*

While Richter attempts to show that Coffey did not rely on Griffith's negative remarks in forming his opinion of Richter, Richter has provided no evidence indicating that Griffith's comments did not contribute to Coffey's overall impression of Richter. In addition, it is insignificant whether Coffey discussed Griffith's remarks with Simone and Lynn; it is sufficient that Coffey's view of Richter was influenced by Griffith's negative comments. Thus the district court correctly found that Richter failed to demonstrate that Revco's reliance on Griffith's negative report that Richter was not a strong performer was pretextual.

*2) Revco's belief that Richter tended to delegate important human resources functions and did not have the desired quality of a "hands-on" manager*

Richter's attempt to prove that Revco's asserted belief that Richter tended to delegate important human resources functions and was not a "hands-on" manager is unworthy of credence is likewise disingenuous. First, as the district court noted, Revco did not reach this conclusion out of thin air. Simone, Lynn, and Coffey concluded that Richter was not the type of "hands-on" manager they wanted based on their personal contacts with Richter and his responses to their questions, with Coffey having the additional input of Griffith's negative remarks. Second, Richter's argument that Revco should have exercised more due diligence to ensure that the conclusion that he was not a hands-on manager was accurate is similarly unpersuasive. See *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir.1994) (argument that defendant only questioned a small number of executives is unpersuasive; if defendant consults with only a few key people and concludes that plaintiff must be fired that is enough). This Court has stated that, in determining whether an employer's reasons are pretextual, the inquiry is " 'whether the employer honestly believes in the reasons it offers,' not whether it made a bad decision," *id.* (quoting *Kralman*, 23 F.3d at 156), and has stressed that "there is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or a bad business judgment." *Kralman*, 23 F.3d at 156. While Richter alleges that Revco should have asked more questions, he cannot demonstrate pretext by challenging the wisdom of Revco's decision; he must challenge the honesty of it. Richter has presented no evidence that calls into question the honesty of Revco's belief that he was not a "hands-on" manager.

*3) Revco's belief that Richter was not sufficiently involved in union avoidance and labor relations functions*

Similarly, Richter does not present evidence indicating that he was actively involved in union avoidance and labor relations functions or that Revco did not honestly believe that he was not involved in this area. Rather, Richter argues that Revco did not actually view active involvement in union avoidance as a significant activity for the Human Resources Manager and, even if it did, that delegating such an activity should not be considered a deficiency. However, Richter does not point to any facts calling into question Revco's belief that Richter's lack of involvement in union avoidance and labor relations was a significant factor in deciding not to retain Richter, and, as previously noted, Richter cannot establish pretext by attacking the wisdom of Revco's business decision.

**C. Richter Offers No Evidence that Age Bias More Likely Motivated Revco's Decision**

 Richter attempts to show that age bias more likely motivated the decision to terminate him by pointing to the subjective nature of Revco's decision-making process which he claims created an environment for age stereotyping to influence the decision. Specifically, Richter claims that Revco's decision-making process was deficient because it did not review his personnel file, request a resume, require more formal interviews, or seek more information from his supervisors. However, as the district court indicated, Richter has demonstrated that Revco's decision-making process was "subjective—at worst, that it [was] arbitrary and unreliable." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 514 (7th Cir.1996). This Court has established that arbitrariness alone does not constitute discrimination and that the subjective nature of a selection process is not sufficient to demonstrate that age bias more likely motivated an employer's decision to terminate an employee.[4] *Id.* "The ADEA

4. In contrast to Richter's contentions, we find that the district court adequately considered and rejected the testimony of Dr. Michael Campion, who stated that the subjective decision-making

process used provided the "perfect atmosphere" for age stereotyping. Because the ADEA does not forbid subjective selection processes, we agree with the district court's conclusion denying

cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Kralman,* 23 F.3d at 157 (quoting *Bienkowski v. American Airlines,* 851 F.2d 1503, 1508 (5th Cir.1988)). See also *Kariotis,* 131 F.3d at 677 (finding that plaintiff's "energy is misspent by attacking the company's decisional process, unless she can point to facts suggesting that the company investigated her differently because she was an older employee").

■■■ Even if the subjective decision-making process in theory could set the stage for age stereotyping to occur, Richter has not shown that it actually did occur. He points to certain statements made by Simone and Griffith which he claims indicate that they impermissibly stereotyped older workers. Specifically, Simone had voiced concerns to Lynn that Richter had a "low energy level" and was "resistant to change," and Griffith, in an evaluation, also commented that Richter was "resistant to change." Richter claims that these statements are "prime stereotypes about aging workers." We agree with the district court's conclusions that these statements, standing alone, do not raise an inference of age discrimination. See *Fuka,* 82 F.3d at 1403, 1406 (finding no inference of discrimination where plaintiff's supervisor stated that he had a preference for "young people fresh out of college" and stated "[n]o, I don't want older people, we want young people we can mold").

In support of the conclusion that the evidence here does not lead to an inference of age discrimination, we note a few additional significant facts. Revco's decision-makers were themselves 46, 53, and 60 years old at the time of the decision. While not dispositive, this Court has found it significant that individuals alleged to have discriminated on the basis of age were themselves members of the protected class. *Mills v. First Federal Sav. & Loan Ass'n of Belvidere,* 83 F.3d 833, 842 (7th Cir.1996). In addition, all but one of the remaining 18 employees who were not retained by Revco were younger than Richter, and nine were younger than 40. See *Testerman,* 98 F.3d at 304–305 (finding it relevant that defendant spared employees in their 50s but discharged employees in their 40s).

Based on these reasons, even if Richter could establish a prima facie case under *McDonnell Douglas,* he cannot demonstrate that Revco's stated reasons for not retaining him were a pretext for discrimination.

## III.

Having reviewed all the evidence in the light most favorable to Richter, we agree with the district court that it is insufficient to support an inference of age discrimination under the *McDonnell Douglas* burden-shifting method of proof. Richter failed to establish a prima facie case of age discrimination because such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger, and he was unable to demonstrate that he was replaced by someone "substantially younger." Furthermore, even if Richter had established a prima facie case, his claim still could not survive a motion for summary judgment because he was unable to show that Revco's stated reasons for discharging him were pretextual. We therefore affirm the district court's order granting summary judgment in favor of Revco and HSI.

AFFIRMED.

defendants' motion to strike Campion's affidavit as moot and thus finding it unnecessary to reach defendants' motion on the merits.