Denise **NESBITT**, Plaintiff,

v.

**AMERICAN DRUG STORES,**
**Defendant.**

No. 98 C 1362.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 22, 1999.

Denise Nesbitt, Chicago, IL, Rhett R. Dennerline, Competition Law Group, LLC, Chicago, IL, for Plaintiff.

Patricia Costello Slovak, Wendy Lynne Nutt, Schiff, Hardin & Waite, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

This case concerns whether a forty-year old Osco management trainee was terminated in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. The plaintiff claims that the general manager of the store where she was to be trained discriminated against her by failing to adequately train her and terminating her based on her age. The defendant moves for summary judgment, which I deny.

### I. *Background*

On August 19, 1996, Denise Nesbitt was hired by American Drug Stores ("Osco") as a management trainee for Osco Drug Stores. At the time, Ms. Nesbitt was forty years old. On August 20, 1996, Ms. Nesbitt began her training. Osco's management trainee program provides trainees with the opportunity to develop the skills necessary to move into store management in a "home store," while simultaneously providing Osco with the opportunity to assess the trainee's competence. During the first sixteen weeks of employment, trainees participate in a formal

training program consisting of lectures/classroom instruction, structured rotation training in various departments in different Osco stores, and orientation and on-the-job training in a "home store." After completing the sixteen week program, Ms. Nesbitt continued to be assigned to her home store for perfection of skills and additional on-the-job training.

Mr. Woods, the store's general manager, was the person responsible for training Ms. Nesbitt at the home store after her training rotation. Mr. Woods had made several comments to Ms. Nesbitt which she took to be age-related and reflective of his fixation upon and dislike of her age. In January, Ms. Nesbitt asked Mr. Woods for further training on the "front-end" of the store and in cash reports. Mr. Woods did not honor this request. During the next two months, she was given only two opportunities to open the store on her own and a single day of cash report training. In contrast, Ms. Rawls, a new supervisor in her twenties hired by Mr. Woods, was provided with 14 days of cash report training and was offered the opportunity to open the store on several occasions. Ms. Nesbitt claims that her own training was halted when Ms. Rawls arrived. Ms. Green, another supervisor in her twenties hired by Mr. Woods, was also given days to open the store.

On March 19, 1997, Ms. Nesbitt was working late with a number of employees to prepare for an inventory scheduled for the following day. She was assigned the task of counting down the money in the vault. Midway through this task, Ms. Nesbitt was called away by an Osco manager. When she returned, she was "short" in her count and was having trouble reconciling the contents of the safe, so she sought assistance from a supervisor, Irma Zamudio. When Ms. Zamudio was able to quickly locate the problem, which she showed to Ms. Nesbitt, Ms. Nesbitt felt ridiculed, and objected that she had counted the money earlier that was the source of the error. As a result, Ms. Nesbitt believed that she was deliberately being set up or "tested"—which she claims Mr.

Woods had also done on a previous occasion. She told Ms. Zamudio to stop "playing with my damn intelligence" and that she "was no damn fool." As Mr. Woods approached, Ms. Nesbitt declared that she was leaving, to which Mr. Woods responded that she was not leaving. Ms. Nesbitt states that she checked with the operating manager Chris Campbell about her duties that ·night and asked Loss Prevention to check her purse. Having worked the full shift for which she was scheduled, Ms. Nesbitt gathered her belongings and left the store.

After an investigation, which included the procurement of statements from each of the parties involved, Osco determined that Ms. Nesbitt's conduct constituted a violation of company policies prohibiting abusive and obscene language to co-workers and prohibiting insubordination. On March 25, 1997, she was terminated.

## II. *Standard of Review*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Since American Drug Stores moves for summary judgment, all evidence and inferences must be construed in the light most favorable to Ms. Nesbitt. *See Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997). Moreover, "intent and credibility are crucial issues in employment discrimination cases, and therefore, the summary judgment standard is applied with added rigor in such cases." *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999).

## III. *Discriminatory Discharge*

Under the ADEA, employers are prohibited from discriminating on the basis of age against employees who are at least forty years old. *See* 29 U.S.C. §§ 623(a), 631(a). The plaintiff's case is most effectively presented using direct evidence supported by circumstantial evidence. *See Huff v. UARCO, Inc.,* 122 F.3d 374, 380 (7th Cir.1997)

■ The direct evidence includes the following statements made by Mr. Woods. When Ms. Nesbitt reported to Mr. Woods on her first day of training, he immediately asked her, allegedly in a demeaning tone and with full knowledge of the answer: "Who hired ... you?" A week after she started work, Mr. Woods was training Ms. Nesbitt on the cash register. As she provided Mr. Woods with her cash register code number, 31, she commented that the number was the same as her mother's birth year. In response, Mr. Woods stated: "Are you sure that's not *your* birth year?" (emphasis added). On another occasion, Ms. Nesbitt was conversing with a co-worker, who asked whether "WIC," a 25-year old government program that provides family assistance, was around at the time she had her children. Although Mr. Woods was not engaged in the conversation, he overhead the discussion as he walked by and stated: "Probably not."

Osco argues that the comments by Mr. Woods made five months before the plaintiff's termination are innocuous, stray remarks insufficient to constitute an acknowledgment of discriminatory intent. *See Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir.1989)(inappropriate but isolated comments that amount to no more than "stray remarks" in the workplace do not meet the threshold of direct evidence); *but see Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir.1997)(remarks and other evidence that reflect a propensity by the decision-maker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of liability). However, I do not examine these statements in a vacuum but in the context of the surrounding circumstances. *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994)(circumstantial evidence alone can create a triable issue and provide a basis for drawing an inference of intentional discrimination).

■ A plaintiff may introduce three types of circumstantial evidence, each of which may be sufficient by itself, or used together, to defeat summary judgment. *Troupe,* 20 F.3d at 736. The first type consists of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* The second is a showing that other employees, similarly situated other than in the characteristic on which an employer is forbidden to base a difference in treatment, received systematically better treatment. *Id.* The third is evidence that the plaintiff was qualified for the job in question but passed over in favor of a person not having the forbidden characteristic and that the employer's stated reason for its decision is "unworthy of belief, a mere pretext for discrimination." *Id.*

The ambiguous statements of Mr. Woods fall into the first category of circumstantial evidence. Although Osco disputes this, Mr. Woods may fairly be considered the relevant decision-maker because he possessed managerial authority over Ms. Nesbitt and was one of the primary decision-makers who terminated Ms. Nesbitt from Osco. Consequently, the legality of Osco's actions and validity of Ms. Nesbitt's ADEA claim relies on Mr. Wood's intent. While it is possible that Mr. Woods asking Ms. Nesbitt who hired her when he had previously been informed of the answer, whether she was born in 1931, and commenting that an established government program was probably not around when she had her children were innocent questions or awkward attempts at jokes or conversation, a rational trier of fact could believe that these were evidence of discriminatory intent. This is credible in view of deposition testimony and other evidence that Mr. Woods acted upon his bias of older workers like herself. Mr. Woods, an admitted "company man" who began working for Osco straight out of college and had been working there continuously for over 25 years, testified that he believes

younger workers are easier to train in the "Osco way," an advantage to hiring such workers. In fact, in his more than twenty years as an Osco manager, Mr. Woods hired hundreds of employees, but only two were over the age of 40.[1] From this, a jury could infer that Mr. Woods held a particular view of who fit the OSCO mold, and Ms. Nesbitt was too old to be anything but a square peg in a round hole.

Ms. Nesbitt also offers evidence in the second category: that Mr. Woods, who would not give her the training that she requested and needed in order to succeed, but he did train younger employees. Ms. Nesbitt alleges that after returning to her home store from her training rotation, she was treated largely as an associate with limited management tasks and, despite her requests, given training which did not meet Osco's stated training program and her own expressed needs. Osco concedes some training disparity but labels it insignificant and attempts to explain it away. The parties' dispute as to compliance with training policies and comparability is an issue of material fact not appropriate for summary judgment. For purposes of this motion, there is sufficient circumstantial evidence to raise an inference of disparate treatment.[2] Indeed, after reviewing all of the evidence, a jury might conclude that Mr. Woods' "who are you" question really meant "why would anyone hire you instead of someone younger and more trainable?"

Finally, Osco argues that regardless of Mr. Woods' statements, Ms. Nesbitt was fired for the nondiscriminatory causes of insubordination and use of profane language. Although Osco's policy permits termination without warning, it clearly states that the preferred method is to warn an employee and to employ progressive discipline, neither of which occurred in Ms. Nesbitt's case. Nor does Osco offer any evidence that it routinely departs from its written, recommended procedures. Mr. Woods admitted during his deposition that he had never fired an employee for insubordination, gross insubordination, or for swearing. Mr. Woods himself only heard Ms. Nesbitt utter the word "damn" and not in a manner that could be construed as threatening or even abusive. Although deference in business judgment matters is generally granted to the employer, Mr. Woods appears to be the primary manager involved in the decision to terminate Ms. Nesbitt, and, due to his previous actions and statements, a jury could conclude that Ms. Nesbitt has cast sufficient doubt onto his motives so as to taint the decision-making process. Ms. Nesbitt has therefore produced evidence from which a rational trier of fact might conclude that the Osco stated reason was insufficient to warrant her discharge and that Osco instead fired her because of her age. *See Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir.1994).

For the foregoing reasons, Osco's motion for summary judgment is DENIED.

---

1. Of these two employees over 40, one was a woman hired—at her own suggestion—to straighten up the Hallmark card section for approximately 2 hours a week, and neither were trained or given any managerial or supervisory experience.

2. Osco does not respond to the circumstantial evidence offered by Ms. Nesbitt except within the indirect evidence framework. The parties disagree as to which of the several different formulations of the test should apply. However, regardless of the prima facie test formulation, the purpose of the fourth factor is to identify facts from which an inference of discrimination can be drawn. *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158–59 (7th Cir.1996)(fourth factor is any evidence from which it can be inferred that the adverse action sprang from a "legally forbidden ground," e.g., more favorable treatment of similarly situated white employees). The circumstantial evidence previously described fulfills this goal in any event.