Diane S. BROWN, Plaintiff,

v.

SOCIETY FOR THE PRESERVATION AND ENCOURAGEMENT OF BARBER SHOP QUARTET SINGING IN AMERICA, INC., Donna Pierce, Frank Santarelli, Darryl Flinn, and Pete McCarville, Defendants.

No. CIV. A. 99–C–0826.

United States District Court, E.D. Wisconsin.

Sept. 22, 2000.

William B. Thompson, Wheaton, IL, David Stewart, Brookfield, WI, for Plaintiff.

Susan E. Lovern, von Briesen, Purtell & Roper, Milwaukee, WI, for Defendants.

## DECISION AND ORDER DATED GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REYNOLDS, District Judge.

Plaintiff Diane S. Brown ("Brown"), alleges that her former employer defendant Society for the Preservation and Encouragement of Barber Shop Quartet Singing in America, Inc. ("the Society"), terminated her employment in violation of the Age Discrimination in Employment Act ("ADEA"). Brown also raises state law claims for assault and battery, false imprisonment, negligence, negligent infliction of emotional distress, civil conspiracy, and defamation. Because this action involves a question of federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331; this court has supplemental jurisdiction over Brown's state law claims pursuant to 28 U.S.C. § 1367. Before the court is defendants' motion for summary judgment on all claims, which the court grants.

### BACKGROUND [1]

The Society is a Wisconsin not-for-profit corporation, with its principal place of

---

1. The court must grant a motion for summary judgment if the pleadings, depositions, an-

business in Wisconsin. Defendant Darryl Flinn ("Executive Director Flinn" or "Flinn") was at all relevant times the Executive Director of the Society. Defendant Frank Santarelli ("Director of Finance Santarelli" or "Santarelli") was at all relevant times the Director of Finance and Administration of the Society. Brown, an employee of the Society, was fifty-two years old at all relevant times.

In 1998, Brown applied to the Society for a position as a clerical assistant/relief receptionist.[2] When Brown first applied for the position, she spoke on the telephone with Dee Vesevick ("Vesevick"), Executive Director Flinn's assistant, about the responsibilities of the position. During the course of that conversation, Brown recalls Vesevick telling her that she was "very over-qualified for this position." (DFOF ¶ 12.) Vesevick was the direct supervisor of the clerical assistants and receptionists. Brown later interviewed with Executive Director Flinn and Vesevick for the job. During the interview, Executive Director Flinn and Vesevick outlined what Brown's responsibilities would be if she accepted a position with the Society: answering the telephone, working in the mail room and warehouse when needed, working on the monthly newsletter, and other miscellaneous clerical duties. Brown was offered the position in July 1998. Brown accepted the position, understanding the job was at the low end of the totem pole and a jack-of-all-trades type of position.

After Brown had been at the Society for several months, Executive Director Flinn began to hear from Vesevick and others that Brown was not getting along well with some of her co-employees, that she was complaining to Vesevick about trivial matters regarding her co-employees, and that she was exhibiting a poor attitude toward some of her co-employees and her own job responsibilities.[3] (DFOF ¶ 17.) For example, Vesevick told Executive Director Flinn that Brown had been expressing her displeasure at some of the tasks she was asked to do through her body language and by making reference to her master's degree in a way that implied that she was too smart to be doing some of the more menial tasks requested of her.[4] (DFOF ¶ 18.) On October 5, 1998, after Brown had worked several months for the Society, Executive Director Flinn and Brown had a meeting to discuss Brown's job performance.[5] Executive Director Flinn indi-

---

swers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). All facts are considered in the light most favorable to the non-movant, and all inferences are resolved in the non-movant's favor. *See Simpson v. Borg–Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir. 1999).

The background facts are taken from the parties' proposed findings of fact. *See* Local Rule 6.05 (E.D.Wis.). When there is no objection to proposed findings of fact, the court accepts them as true. *See* Local Rule 6.05(d). In the background section, undisputed background facts do not contain citations; quoted or disputed facts do. The court will refer to defendants' June 2, 2000, proposed findings of fact as "DFOF" and to Brown's July 10, 2000, response to proposed findings of fact (together with its appended affidavit) as "PR."

**2.** Neither party proposes facts that indicate the specific month Brown applied for a job at the Society.

**3.** Although Brown does not deny that Vesevick communicated these concerns to Executive Director Flinn, Brown contends that she did not have problems getting along with her co-employees and that she did not exhibit a poor attitude toward her co-employees or her job responsibilities. (PR ¶ 17.)

**4.** Brown's response to this proposed finding of fact is "I dispute PFF 18 ... and state it is false." (PR ¶ 18.) It is unclear whether Brown contends Vesevick did not tell Executive Director Flinn that Brown was expressing displeasure about her job, or whether Brown contends she did not express any displeasure about her clerical position at the Society.

**5.** Executive Director Flinn and Brown agree that the meeting occurred. Brown characterizes it as a routine job performance review.

cated that he was pleased with Brown's job performance, but also stressed the importance of being a team player and the "perception of family" at the Society.[6]

On the morning of October 19, 1998, Brown was sent to the Society's west office, Harmony Hall West, to work in the mail room because one of the regular mail room employees was absent. Defendant Donna Pierce ("Pierce") was Brown's supervisor in the mail room and had previously shown Brown how to sort and open mail. While Brown was doing the mail, Pierce came in to see how Brown was progressing. Pierce told Brown that Brown was not sorting the mail correctly. Brown, however, believed she was doing the job as it had been explained to her, insisted she was sorting the mail correctly, and tried to show Pierce that Brown had sorted the mail properly. Pierce began throwing mail, sorting it herself. Brown did not ask Pierce for clarification as to how Pierce wanted Brown to sort the mail. (DFOF ¶ 44, Mar. 17, 2000, Brown Dep. ("Brown Dep.") at ¶¶ 41–42.) Instead, Brown said to Pierce, something to the effect of, "I'm doing it the way you want me to do it. If you don't want me to work here anymore, I'll go tell Frank [Santarelli] ... If you don't like the way I'm doing it, maybe I should leave." (DFOF ¶ 46.)

Brown got up to leave. Pierce grabbed Brown by the arm, pulling Brown toward her with force. Pierce held onto Brown's arm for ten to fifteen seconds and released Brown's arm when Brown told Pierce to let her go. Brown screamed that she was going to call the police when Pierce grabbed her arm. After Pierce released Brown's arm, Brown left the mail room. (DFOF ¶ 50.) Brown went to Director of Finance Santarelli's office to relay infor-

mation to him about this altercation and then went back to the mail room to finish the mail. Upon return, Brown overheard Pierce stating to defendant Pete McCarville ("McCarville")[7], another employee of the Society, "Diane can't learn a thing. I have shown her three times how to sort the mail. She is still doing it wrong, she doesn't listen and refuses to do it the right way." (DFOF ¶ 61.) McCarville then entered the mail room, closed the door, and said to Brown, "When you are in here, I'm your boss too, and you can't learn[.] Donna [Pierce] has shown you three times, you can't understand anything and you are stupid." (DFOF ¶ 64.) Brown then finished the mail.

Prior to this incident in the mail room, Mail Room Supervisor Pierce had never touched nor "done anything" to Brown. (DFOF ¶ 55.) Pierce had worked for seven-and-one-half years at the Society at the time of the incident, and Pierce had always been an employee in good standing with the Society when the mail room altercation occurred. Pierce was thirty-three years old at that time.

On the afternoon of October 19, a few hours after the mail room incident, Director of Finance Santarelli called a meeting to discuss the mail room incident Brown had reported to him that morning. Director of Finance Santarelli, McCarville, Pierce, Vesevick, and Brown attended the meeting. Director of Finance Santarelli asked Brown and Pierce to explain what had happened in the mail room. Brown believed McCarville and the others were ridiculing her during the meeting because McCarville had his feet up on a chair and was "smirking," and McCarville stated "[Pierce] just touched you," while others at the meeting interrupted Brown and

---

(PR ¶ 19.) Flinn contends that Brown met with him to talk about Brown's job and discuss "some of the feelings she was having." (DFOF ¶ 19.)

**6.** Executive Director Flinn and Brown agree that the importance of being a team player was discussed at this meeting. Brown, how-

ever, contends Flinn told her she was a good team player. (PR ¶ 25.) In contrast, Executive Director Flinn says he told Brown that she needed to work on being a better team player. (DFOF ¶¶ 24–25.)

**7.** Neither party proposes facts describing McCarville's position at the Society.

laughed. (PR ¶ 69.) Brown left in the middle of the meeting without authorization from her supervisors, Director of Finance Santarelli and Vesevick.[8] Brown did not speak with anyone else at the Society that day about what had happened.

Director of Finance Santarelli called Executive Director Flinn later that afternoon and told Flinn about the mail room incident. Flinn then spoke with Pierce and another employee said to have witnessed part of the incident.[9] Executive Director Flinn learned, among other things, that Brown had refused to take instructions from Pierce, had threatened to call the police when touched on the arm, and had walked out of the meeting designed to discuss the incident. Executive Director Flinn then spoke with Vesevick about Brown's behavior at that meeting as well as Brown's general attitude at the Society. Executive Director Flinn's assessment of Brown's behavior and attitude in conjunction with the mail room incident was that it confirmed his earlier concerns regarding Brown's perception of her position at the Society and her inability to be a team player. Executive Director Flinn decided that even though Brown performed tasks assigned at her own desk well, Brown held other of her assigned duties and coworkers in disdain, and Brown was not working well with others and was not a good fit with the Society family.[10] (DFOF ¶ 83). Executive Director Flinn did not speak with Brown that day.

On October 20, a day after the mail room incident, Brown went to work at the Society as usual. Brown did not speak to Executive Director Flinn or anyone else at the Society about the mail room altercation

from the previous day. Brown hoped time would heal any tension or bad feelings regarding the mail room incident. Later that morning, Executive Director Flinn met with Brown and terminated Brown's employment with the Society. Brown acknowledges that Executive Director Flinn told Brown he was firing her because he did not see how Brown could work in the mail room in light of the incident the previous day and because he did not believe Brown was a good fit with the Society family.

At the time she was fired, Brown was fifty-two-years-old. Three of Brown's superiors at the Society, Executive Director Flinn (63),Vesevick (69), and Director of Finance Santarelli (57), were older than Brown. The woman hired to replace Brown at the Society was fifty-three years old when hired.

### DISCUSSION

#### Age Discrimination Claim

There are two ways for Brown to avoid summary judgment on an age discrimination claim. Brown can either present direct proof that age was a factor in the Society's decision to terminate her employment, or Brown can establish a *prima facie* case of age discrimination under the *McDonnell Douglas* burden-shifting method of proof. *See Richter v. Hook–SupeRx, Inc.,* 142 F.3d 1024, 1028 (7th Cir.1998). Under the *McDonnell Douglas* method, Brown can make out a *prima facie* case by showing: 1) she was in the protected age group of persons 40 or older; 2) she was performing her job satisfactorily; 3) she was discharged; and 4) substantially youn-

---

8. Brown does not dispute that she left the meeting without authorization from Director of Finance Santarelli and Vesevick, but Brown contends the meeting was "over" because the meeting participants demonstrated that they were not listening to Brown and not taking any action. (PR ¶ 69.)

9. Without giving reasons or evidentiary support for the assertion, Brown contends that the employee with whom Executive Director

Flinn spoke did not witness the mail room incident. (PR ¶ 77.)

10. Brown disputes this assertion, contending her work performance was always good and that Vesevick and Executive Director Flinn told her as much. (PR ¶ 83.) Brown does not specify when Vesevick and Executive Director Flinn told her this.

ger employees were treated more favorably. *See Hoffmann v. PRIMEDIA Special Interest Publications,* 217 F.3d 522, 524 (7th Cir.2000). If Brown successfully makes out a *prima facie* case, the burden shifts to the Society to offer a legitimate, nondiscriminatory reason for terminating Brown's employment. *See Richter,* 142 F.3d at 1028. After the Society offers a nondiscriminatory reason for termination, the burden shifts back to Brown to show that the proffered reason is a pretext for discrimination. *See id.* at 1028.

In the case at hand, Brown presents no direct or circumstantial proof that age was a factor in Executive Director Flinn's decision to terminate her employment. Instead, Brown relies on the *McDonnell Douglas* method of proof, attempting to make out a *prima facie* case of age discrimination. Brown fails in this endeavor because Brown does not show one of the required elements: that substantially younger employees were treated more favorably at the Society than Brown.

The Supreme Court has clarified what it means for "substantially younger employees" to be treated "more favorably" in the context of age discrimination cases where only one employee has been fired. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The Court held that plaintiffs must prove they were replaced by someone "substantially younger" in order to meet the fourth factor in the *McDonnell Douglas* test. *See id.* at 308, 116 S.Ct. 1307. Similarly, the Seventh Circuit Court of Appeals has held, "In situations involving the simple termination of a single employee, normally the employee must establish that the employer *sought a younger replacement for him." Miller v. Borden, Inc.,* 168 F.3d 308, 313 (7th Cir.1999) (italics in original). Replacements are presumptively deemed "substantially younger" than their predecessors if they are ten or more years younger than the employees they replaced. *See Richter,* 142 F.3d at 1028.

In the present case, Brown was replaced at the Society by a woman who was fifty-three-years-old, one year older than Brown at the time she was fired. Brown's replacement was therefore not "substantially younger" than Brown. In fact, the replacement worker was older than Brown. Brown fails to meet the fourth prong of the *McDonnell Douglas* test and therefore fails to make out the *prima facie* case necessary to survive summary judgment.

Brown's argument that younger employees were treated more favorably than Brown at the Society is that 33–year–old Pierce was not fired after the mail room incident, whereas 52–year–old Brown was fired. These facts alone do not establish more favorable treatment of younger employees at the Society. Brown, a clerical assistant, had worked at the society for only three months when fired, and Pierce, the Mail Room Supervisor, had worked there for more than seven years. Pierce had always been an employee in good standing with the Society, whereas Executive Director Flinn had been hearing complaints regarding Brown's ability to get along with co-workers. Further, Brown was not fired simply because of the mail room incident. Executive Director Flinn states that Brown's walking out of the meeting designed to discuss the incident as well as Brown's apparent inability to get along with co-workers contributed to Executive Director Flinn's decision to fire Brown. Brown pointing out that Pierce was not fired is not enough to raise a question of fact as to whether younger employees were treated more favorably than older employees at the Society.

Making out the requisite *prima facie* case is only the first step in an age discrimination case. Even if Brown could successfully make out a *prima facie* case of age discrimination, she also would have to show that the Society's proffered non-discriminatory reason for firing her was a pretext for age discrimination. *See*

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the present case, Executive Director Flinn contends that he terminated Brown's employment based on his subjective assessment of Brown's behavior and attitude in conjunction with the mail room incident and his perception of Brown's inability to work well with co-employees. It is Brown's burden to show that this reason is pretextual.

In Brown's response brief opposing summary judgment, Brown argues that Executive Director Flinn's reasons for firing her were a pretext for age discrimination because when Flinn fired Brown, he told Brown that she did not fit into his picture of the Society family. Brown argues that the phrase "Society family" reveals the true reason Executive Director Flinn fired Brown, age discrimination.[11] It is not immediately apparent to this court that "fitting into the Society family" is code-phrase for discrimination, especially given Flinn's October 5, 1998 discussion with Brown in which Flinn emphasized the importance of teamwork and "perception of family" at the Society, and given the fact that Flinn, Vesevick, and Santarelli were all older than Brown. The Seventh Circuit Court of Appeals has held that statements such as wanting "new blood" or a younger, "energetic" replacement worker for an older worker do not raise a genuine issue regarding whether a plaintiff's termination was motivated by age discrimination, even in a situation where an employee was fired and replaced with a substantially younger worker. *See Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106 (7th Cir.1998). When taken into ac-

count with the fact that Brown was replaced by an older employee, Executive Director Flinn's assertion that Brown did not fit into his picture of the Society family is not sufficient evidence to create a question of fact regarding whether Executive Director Flinn's reason for firing Brown was pretextual.

■ In addition, the fact that Executive Director Flinn made the decision to both hire and fire Brown and did so in a short period of time gives rise to the common actor presumption:

> The common actor presumption exists when an employee in a protected class "is hired and fired by the same decision-maker in a relatively short time span" ... "It is highly doubtful that a person who hires an employee in the protected age group ... would fire that same employee ... as a result of a sudden 'aversion to older people.'"

*Roberts v. Separators, Inc.,* 172 F.3d 448, 452 (7th Cir.1999).

Although plaintiff correctly cites *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 745 (7th Cir.1999), as stating that the same actor inference is not likely to be dispositive in most cases, in this case the presumption is strong because Brown was fired such a short time after she was hired. Executive Director Flinn made the decision to hire Brown, and then, only three months later, made the decision to fire Brown. It is unlikely that Executive Director Flinn, who was himself eleven years older than Brown, suddenly developed an aversion to Brown because she was fifty-two years old.[12]

---

**11.** Brown cites *Nesbitt v. American Drug Stores,* 82 F.Supp.2d 832 (N.D.Ill.1999) for the proposition that "a boss who fired someone because she 'did not fit the Osco mold' had raised a material fact question for the jury." (July 10, 2000 Pl.'s Brief (appended to PR) in Opp'n to S.J.). This does not appear to be a direct quote from *Nesbitt.* Moreover, *Nesbitt* is not controlling precedent for this court. Furthermore, in *Nesbitt,* a manager actually testified that he believed younger workers were easier to train than older work-

ers, and that out of the hundreds of employees he hired, only two were older than forty. *See id.* at 835.

**12.** In Brown's brief opposing summary judgment, Brown argues that the same actor inference is not available in this case "because Flinn had a major intervening event in the form of an assault and battery by a young against an older employee and he favored the youth." Brown cites *Stalter v. Wal–Mart Stores, Inc.,* 195 F.3d 285, 291 (7th Cir.1999),

Brown fails to make out a *prima facie* case of age discrimination under the *McDonnell Douglas* burden-shifting method of proof because she cannot show that substantially younger employees were favored over older employees at the Society. In addition, Brown failed to present evidence sufficient to create a question of fact regarding whether the Society's stated reasons for firing Brown were pretextual. Brown's age discrimination claims will therefore be dismissed.

### Retaliation Claim

Brown's July 21, 1999 complaint alleges a civil retaliation claim. In order to prevail on a civil retaliation claim, Brown must show: 1) that Brown was engaged in a statutorily protected activity, 2) that Brown suffered an adverse employment action; and 3) there is a casual connection between Brown's protected activity and the adverse employment action. *See Sauzek v. Exxon Coal U.S.A.*, 202 F.3d 913, 918 (7th Cir.2000).

Brown's complaint alleges that Executive Director Flinn fired Brown after Brown complained to him on October 19, 1998, about Director of Finance Santarelli treating thirty-three-year-old Pierce more favorably than Brown. In Brown's response to defendants' proposed findings of fact, however, Brown admits that she did not speak with Executive Director Flinn on October 19, the day of the mail room incident. This court is therefore uncertain as to what Brown's civil retaliation claim entails because it is unclear what protected activity Brown claims she was engaging in. Defendants, in their brief in support of summary judgment, argue that Brown does not make out a *prima facie* case for retaliation because she does not specify what statutorily protected activity she was engaged in or what connection that activity had to the termination of Brown's employ-

ment. Brown does not respond to defendants' civil retaliation arguments in her brief opposing summary judgment. The court deems the civil retaliation claim abandoned. The retaliation claim is dismissed.

### State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Brown's state law claims.

### CONCLUSION

Defendants' Society for the Preservation and Encouragement of Barber Shop Quartet Singing in America, Inc., Donna Pierce, Frank Santarelli, Darryl Flinn, and Pete McCarville's motion for summary judgment is **GRANTED**. This action is **DISMISSED**.

---

for this proposition, but the cited case contains no reference to any kind of intervening event. In that case, the court said that it did not give much weight to the same actor inference because plaintiff in that case was the only African–American employee hired by the employer involved. *See id.* In the present case, several of the employees of the Society were older than Brown.