**Douglas W. MILLER, Plaintiff–Appellant,**

**v.**

**BORDEN, INC., Defendant–Appellee.**

No. 98–2814.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 16, 1998.

Decided Feb. 8, 1999.

Carl E. Hawkinson (argued), Barash & Stoerzbach, Ronald Henson, Mustain, Lindstrom & Henson, Galesburg, IL, for Plaintiff–Appellant.

David B. Johnson (argued), Ann K. Shuman, Sidley & Austin, Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, COFFEY and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Borden, Inc., terminated Douglas Miller from his job as a sales representative in 1994, when Miller was 57 years old. He sued under the Age Discrimination in Employment Act (ADEA), alleging that the company, by discharging him and dividing his sales accounts between two younger employees, had discriminated against him on account of his age. *See* 29 U.S.C. §§ 621, 623. The district court granted summary judgment for Borden, holding that Miller had failed to establish a *prima facie* case of age discrimination. Miller appeals. We conclude that Miller has established a *prima facie* case, and that he has met his burden of demonstrating the existence of a genuine issue of material fact with regard to the legitimacy of the company's reasons for discharging him. Therefore, we reverse.

I.

Borden manufactures and markets, on a nationwide basis, printing inks for use on boxes. The company hired Miller in 1967. In 1980, Miller relocated to Galesburg, Illinois, and began to service accounts in Borden's Midwest region. By the late 1980s, Miller serviced accounts through a geographical area larger than the area serviced by any other Borden salesperson. It stretched not only from Illinois to Wisconsin and Minnesota, but all the way to Nebraska and South Dakota, as well as to Kansas City and St. Louis. Since Miller covered the ground by car, his "territory" was particularly difficult to service.

Miller's performance reviews were generally positive. Although sales in the Midwest began to decline for a variety of reasons during the early 1990s, those reasons were not related to the quality of his performance. Borden, however, was particularly concerned by the problem posed by the geographic dispersal of Miller's accounts, and the company began to look for ways to solve the problem. Thus, in 1991 and 1992 Borden reassigned the accounts located in St. Louis and Rockford to other Midwest sales representatives. The Rockford accounts were assigned

to a recently hired, 41–year–old salesman named Les Mines. Ultimately, the company concluded that the distribution of Miller's remaining accounts also had to be reorganized. Having examined the situation, George Sickinger, Borden's Director of Sales and Marketing, decided to discharge Miller. Miller's accounts, worth $1,000,000, were divided between the Midwest region's supervisor Richard Dumas (age 47) and Mines (then age 43)—despite Borden's lack of satisfaction with the latter's performance during his few years with the company.

In the district court, Miller alleged that he had been terminated because he was 57 years old. He submitted an affidavit signed by his supervisor Dumas, asserting that "on numerous occasions, in reference to evaluation of personnel, including Doug Miller, Mr. Sickinger said, 'Always see if a person's best years are ahead of him or behind him.'"

Borden initially alleged that Miller had been discharged because of declining performance, and supported this allegation by pointing to the fact that some of Miller's performance reviews had included admonishments for him to approach his work more aggressively. Faced, however, with the documented history of largely positive evaluations of Miller's performance, Borden soon explicitly conceded (and continues to concede) that "it is undisputed that the decision to eliminate Miller's territory was *not* based upon an evaluation of his performance." Instead, Borden asserted that Miller's discharge was a simple, albeit unfortunate, result of eliminating an unviable territory. Miller, on the contrary, argued that only he was terminated, and that the so-called "elimination of the territory" was a way of dividing up his accounts between younger salesmen.

Sickinger, in his deposition, stated that he decided to terminate Miller because Miller refused an offer of transfer to another region. Sickinger stated that at a meeting held between himself, Miller and another company official to discuss Miller's severance package, "it was referenced to [Miller] that he had been offered relocation." Miller, however, denies that he ever received such an offer. His "separation" form (filled out and signed by the company official who conducted his exit interview) does not refute that denial; in response to the question "Was employee offered a transfer to another job, shift, location?" neither of the two boxes ("yes" or "no") is marked.

The district court concluded that Sickinger's repeated "best years" remarks did not constitute direct evidence of a discriminatory intent, for there was no evidence that they played a role in the specific decision to terminate Miller. Therefore, the district court applied the indirect, burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as applied to the ADEA. *See, e.g., Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 571 (7th Cir.1998). The court concluded that, under this approach, Miller had failed to establish a *prima facie* case of discrimination, for he had not shown that he was treated less favorably than a younger employee.

In reaching this conclusion, the district court rejected Miller's argument that his "territory" consisted of a set of accounts which had been divided up and reassigned to younger employees. Rather, the court envisioned the territory as a geographical area. According to the district court, Miller would have been treated less favorably than a younger employee only if some *other* comparably unviable geographic area (say, within the East Coast region) had continued, in similar circumstances, to be serviced by a younger employee. But, the court observed, Miller had offered no evidence that Borden had retained other, geographically distinct, "unviable" areas that were serviced by younger sales representatives. As for the absorption of a large portion of Miller's accounts by the younger and less qualified Mines, the court opined that, if Miller's definition of "territory" were right, "then nearly every litigant over the age of 40 could satisfy the fourth prong of the *prima facie* case where the employer retains a younger employee." Since this was not possible, the court held that the facts that Mines inherited Miller's accounts, and that he was a younger and possibly "inferior" employee, were "not enough to establish that younger employees were treated more favorably." Therefore,

the district court concluded that Miller had not established a prima facie case under *McDonnell Douglas*, and granted summary judgment for Borden.

## II.

■ This court reviews de novo a district court's entry of summary judgment. *Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 450 (7th Cir.1998). The district court's decision to grant summary judgment should be upheld "when the record reflects no genuine issue of material fact and the moving party ... is entitled to judgment as a matter of law." *Id.* The record is to be examined in the light most favorable to Miller, but conclusory allegations will not suffice. *Fisher v. Wayne Dalton Corporation*, 139 F.3d 1137, 1140 (7th Cir.1998). "[I]ntent and credibility are crucial issues" in employment discrimination cases, and therefore the summary judgment standard is "applied with added rigor" in such cases, *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir.1997), but summary judgment "will not be defeated simply because motive or intent are involved." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir.1997).

■ To succeed on a claim under the ADEA, Miller must show that the adverse employment action would not have occurred "but for" his employer's motive to discriminate against him on the basis of his age. *See Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir.1998). Discrimination may be established in either of two ways: by direct evidence or by the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of discrimination may be drawn.

■ Miller argues that he has direct evidence that discriminatory animus played a role in his termination, namely, Sickinger's alleged statement (reiterated, according to Dumas, on numerous occasions), "Always see if a person's best years are ahead of him or behind him." Direct evidence is "evidence which if believed by the trier of fact, will

prove the particular fact in question without reliance on inference or presumption." *Cowan v. Glenbrook Security Services, Inc.*, 123 F.3d 438, 443 (7th Cir.1997). If the evidence consists of isolated statements, those statements should be "causally related to the ... decision making process," *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir.1996), for direct evidence "relate[s] to the motivation of the decisionmaker responsible for the contested decision." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir.1997). "Remarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality." *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir.1997).

■ According to Dumas's affidavit, Sickinger's alleged statement was made "on numerous occasions, in reference to evaluation of personnel, including Doug Miller." At the summary judgment stage, we must assume that the defendant's agents made the statements attributed to them. *See Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir.1996). The alleged statement, if believed by the factfinder, could cast light on a motivation that contributed to Sickinger's decision to terminate Miller. Borden argues that the statement is ambiguous, and in fact had nothing to do with age; Miller insists that the statement clearly does refer to age, and he points out, quoting an earlier decision of this court, that "the task of disambiguating ambiguous utterances is for trial, not for summary judgment." *Huff*, 122 F.3d at 384. Nonetheless, there appears to be little or no evidence that the statement was actually used in reference to the "specific employment decision in question," *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989), and therefore it is debatable whether Miller has come forward with direct evidence that Borden discriminated against him.

■ We need not decide that matter, however, for Miller does not argue merely that he has direct evidence of Borden's discriminatory animus. He also argues that

*indirect* evidence points to the likelihood that Borden terminated him on account of his age. A claim of discriminatory discharge that relies on indirect evidence must be analyzed using the *McDonnell Douglas* burden-shifting analysis. *See Fairchild*, 147 F.3d at 571. This means that Miller bears the initial burden of making out a *prima facie* case of age discrimination; if he does establish that case, the burden of production then shifts to Borden to "come forward with evidence of a 'legitimate, non-discriminatory reason'" for its actions. *Adreani v. First Colonial Bankshares Corporation*, 154 F.3d 389, 394 (7th Cir.1998) (quoting *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 302–303 (7th Cir.1996)). If, in turn, Borden does come forward with a non-discriminatory reason, the burden shifts back to Miller to demonstrate that his employer's proffered reasons for terminating him were pretextual. *Id.* If Miller meets his burden, or if Borden does not meet its burden, then the case proceeds to trial.

In order to demonstrate a *prima facie* case of retaliation under the ADEA, Miller first must establish that he "(1) was a member of the protected class (age 40 or over); (2) was doing his job well enough to meet his employer's legitimate expectations; [and] (3) was discharged or demoted." *Cengr*, 135 F.3d at 451. A crucial fourth element must also be established. We have formulated this element in different fashions depending on the type of age discrimination alleged. *See Cengr*, 135 F.3d at 451, n. 1; *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331–1332 (7th Cir.1995). In situations involving the simple termination of a single employee, normally the employee must establish that the employer *sought a younger replacement* for him. *Gadsby*, 71 F.3d at 1331. An important exception, however, arises when an employer, in the course of restructuring the business, terminates an employee and does not *replace* the terminated employee, but arranges affairs so that the "responsibilities [of the terminated employee are] absorbed by other employees." *Cengr*, 135 F.3d at 451, n. 1. This court has explained that "the inference of discrimination [in such cases] is premised on some degree of fungibility between the [terminated employee's] job and the younger employee's job." [1] *Gadsby*, 71 F.3d at 1331. In the "fungibility" type of situation, all the employee needs to establish is that he was *treated less favorably* than one or more similarly situated younger employees. *Id.*; *Maier v. Lucent Technologies, Inc.*, 120 F.3d 730, 735 (7th Cir.1997).[2] Thus, an employer who discharges a protected employee and either hires or *retains* younger employees "to fill positions for which the older employee was qualified" bears the burden of explaining its actions. *Oxman v. WLS–TV*, 846 F.2d 448, 455–456 (7th Cir. 1988). The younger employees "need not be outside the protected class, i.e., under the age of forty," *Maier*, 120 F.3d at 735; but they should be substantially—i.e., at least ten years—younger than the terminated employee. *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 892–893 (7th Cir.1997).

Thus, if Miller's discharge is construed as a "fungibility" situation, to establish a *prima facie* case of discrimination he need show only that he was treated less favorably than the substantially younger employees who absorbed his accounts—Mines and Dumas—and that these employees were similarly situated to himself. If Miller can make this showing, the burden then shifts to Borden to show that it had a legitimate reason for terminating Miller.

The district court concluded, and Borden does not contest, that Miller estab-

---

1. *Gadsby* adopted the term "mini-RIF" for single-discharge cases in the reduction-in-force context. We prefer to describe such cases as cases involving "fungibility." As a rule of thumb, a RIF or "reduction in force" occurs where an employer, in the course of restructuring the business, terminates several (or numerous) employees and does not *replace* them with new employees. *See, e.g., Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir.1995); *Oxman v. WLS–TV*, 846 F.2d 448, 453 (7th Cir.1988).

2. Many of this circuit's decisions do not include the words "similarly situated" in the formulation of the fourth element of the *prima facie* case. *See, e.g., Collier*, 66 F.3d at 891 (fourth element is that *"younger employees* were treated more favorably") (emphasis added) (internal quotations omitted). Since we conclude that Miller's duties were absorbed by younger employees similarly situated to him, we have no need to decide in what circumstances the question must be put whether the younger employees are similarly situated to the terminated employee.

lished three elements of a *prima facie* case of retaliation. The court, however, also concluded—in our view, incorrectly—that Miller did not establish the fourth element. Borden argues that the case does not involve fungibility but must be construed as a single, and simple, discharge; and that Miller could establish the fourth element of a *prima facie* case only by showing that Borden sought to *replace* him with a younger employee. Borden's argument brushes over the fact that Miller's accounts were divided between two substantially younger employees—both in their forties, while he was approaching 60. The argument fails to dissuade us from concluding that Borden retained younger employees "to fill positions for which the older employee was qualified." *Oxman*, 846 F.2d at 455–456. In contrast, Miller argues, and we are convinced, that his case involves exactly the type of "fungibility" situation discussed in *Gadsby* and *Cengr*.

The district court stated that if Miller had succeeded in establishing the fourth prong of the *prima facie* case, "then nearly every litigant over the age of 40 could satisfy the fourth prong ... where the employer retains a younger employee." The statement is again inaccurate. Such a litigant could establish the fourth element of the *prima facie* case only if "there is some degree of fungibility" between his job and that of the younger employee who "absorbs" his responsibilities. *Gadsby*, 71 F.3d at 1331. That is the case here. Borden reduced its work force by eliminating Miller, and assigned his accounts to two substantially younger salesmen, one of whose previous performance is alleged (and conceded) to be less than satisfactory. We note, in addition, that the district court's conclusion that Mines and Dumas were not similarly situated to Miller is untenable. The conclusion appears to be premised on the idea that Miller's responsibilities consisted of servicing a geographic region, rather than a set of sales accounts within that region. This logic would ultimately lead to the conclusion that, since Miller serviced the largest Borden "territory," no other Borden salesperson—not even one servicing an identical number of similar accounts—could be "similarly situated" to him. Fixating on its own construction of what constitutes a "terri-

tory," Borden insists that "Miller's termination was *caused* by the elimination of his territory." The statement, like most of Borden's argument, ignores the fact that Miller's accounts, worth $1,000,000, were assigned to and divided between two younger salesmen in the same general Midwest region. Thus, we conclude that Miller has satisfied the fourth element of the *prima facie* test because he was treated less favorably than two substantially younger salesmen whose responsibilities were fungible with his own. We emphasize that, to satisfy the fourth element of the *prima facie* case, Miller does not need to show that a single salesperson took over his entire "territory," i.e., all of his accounts; rather, he needs to show only that his responsibilities were "absorbed by other [younger] employees." *Gadsby*, 71 F.3d at 1331.

### III.

The establishment of Miller's *prima facie* case is not yet fatal to Borden, which may still rebut that case by establishing that it had a legitimate reason for terminating him. *Adreani*, 154 F.3d at 394. Borden offers two alternative reasons, both of which Miller claims to be pretextual. *See Collier*, 66 F.3d at 892. "Although the matter is certainly close, we believe that [Miller] casts sufficient doubt on [Borden's] proffered reasons to make summary judgment inappropriate." *Id.* First, Borden claims that it had to eliminate Miller's accounts because it was no longer worth the company's while to pay a salary for their servicing. The accounts, according to Borden, were divided among salespersons who already had "viable" sets of accounts. But as many as half of Miller's accounts were absorbed by Mines, a younger salesman whose previous performance Borden concedes to have been inadequate, and thus inferior to Miller's. The lurking question is why Miller was treated less favorably than Mines, for it is not apparent why the size of Miller's territory should have been any more significant than the contrast between the extent of Miller's experience and Mines' inadequate performance. A reasonable jury might also conclude that Sickinger's alleged discriminatory remark, "Always see if a person's best years are ahead of him or behind him," undermines Borden's assertion

 

that age had nothing to do with Miller's discharge. It is true, as Borden asserts, that nothing in the ADEA required Borden to offer Miller the responsibilities of another employee simply because he was older. We further note that we do "not sit as a super-personnel department that reexamines an entity's business decisions." *Fairchild,* 147 F.3d at 573 (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)). Nonetheless, the circumstances of this case raise a material issue of fact as to why Miller was not allowed to retain a reduced territory and given the opportunity to develop it. Significantly, the record is silent as to whether Borden has sought to have Mines and Dumas create new accounts within the geographic areas containing the batches of Miller's accounts that were absorbed by the two younger employees.

■ Second, Borden argues that Miller had received, from Dumas, an offer to transfer to another region of the country; Sickinger, in his deposition, stated that Miller would not have been terminated if he had accepted the purported offer. But no offer of a transfer is reflected in Miller's "separation" form, and Miller denies ever having received such an offer. Borden also points out that whether or not Miller actually received such an offer is of no import, for it would have been enough for Sickinger to *think* that Miller had received the offer. "We find it relevant that [Borden] has produced very little evidence to support [this] proffered reason[ ]." *Collier,* 66 F.3d at 893. We conclude that a material issue of fact exists both as to whether Miller actually received an offer of transfer and as to whether Sickinger, who himself terminated Miller, believed that such an offer had been made. Therefore, the issue of an offer of transfer is also a matter for the jury.

## IV.

Miller may or may not have made out a direct case of discrimination, but he has established the four elements of a *prima facie* case, for he has shown that he was treated less favorably than similarly situated, substantially younger employees. Moreover, Miller has cast sufficient doubt on Borden's proffered reasons for discharging him to render summary judgment inappropriate. Therefore, he has met his burden of demon-strating the existence of a genuine issue of material fact with regard to the legitimacy of Borden's reasons for discharging him, and the district court erred in granting summary judgment to Borden. We REVERSE the district court's ruling and REMAND the case for further proceedings in accordance with this opinion.