In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2967

James H. Ransom,

Plaintiff-Appellant,

v.

CSC Consulting, Inc., d/b/a CSC Index,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 0244--David H. Coar, Judge.

Argued February 8, 2000--Decided June 16, 2000

   Before Cudahy, Manion, and Diane P. Wood, Circuit
Judges.

   Manion, Circuit Judge.  James Ransom, a highly-
paid consultant, sued his former employer, CSC
Consulting, Inc., under the Age Discrimination in
Employment Act, claiming that CSC fired him
because of his age. The district court granted
CSC summary judgment. Ransom appeals, and we
affirm.

I.  Factual Background

   James Ransom began working for CSC in 1993 as an
independent contractor. In 1996, when he was 55,
CSC hired Ransom to work in its Chicago office as
a vice-president at a base salary of $360,000. In
March 1997, CSC's president announced a new
turnaround strategy for CSC, and as part of this
strategy CSC fired some of its vice presidents
and required the remaining officers to both
manage and sell CSC's consulting services. A few
months later, CSC's management team decided to
eliminate poorly performing officers from the
company; to evaluate performance, the management
team looked at the officers' sales performance
targets, progress in achieving those goals, and
revenues.

   On September 19, 1997, CSC's CEO, Douglas Gray,
fired Ransom, who was then 56. Claiming that he
was fired because of his age, Ransom sued CSC
under the ADEA. CSC moved for summary judgment,
arguing that it fired Ransom for a legitimate
non-discriminatory reason--his failure to meet

performance targets. The district court granted CSC's motion. Ransom appeals.

II.  Analysis

We review de novo a decision on summary judgment, considering the facts in the light most favorable to the non-moving party. Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. Against this well-established backdrop, we consider Ransom's age discrimination case.

Ransom sued under the ADEA, which prohibits intentional discrimination against persons age 40 or over. 29 U.S.C. sec. 621(b). Cengr v. Fusibond Piping Systems, Inc., 135 F.3d 445, 450 (7th Cir. 1998). To prove age discrimination, a plaintiff may proceed under either the direct or indirect method. Here, Ransom attempts both--he contends that CEO Gray's deposition testimony directly evidences an age animus, and that that same inference arises under the McDonell Douglas burden-shifting (indirect) approach. 411 U.S. 792 (1973).

We begin with the direct case. "Direct evidence 'must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question.'" Baron v. City of Highland Park, 195 F.3d 333, 339 (7th Cir. 1999) (quoting Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 569 (7th Cir. 1989)). Ransom cites the following deposition testimony given by CEO Gray as direct evidence of age discrimination:

Q. Were newly-made officers treated differently by the management committee, when the management committee discussed the October adjustment?

A. Yes.

Q. Why?

A. Well, if you're going to promote a principal to officer, you can't perfectly hold them accountable to officer performance for at least a couple of years into their tenure as officers. And we wouldn't have promoted them if we were going to then terminate them. That's sort of inconsistent behavior, management behavior. So by definition in our model, we really had to exempt them from that process. Now, the model is more dynamic than that because we knew we were going to promote certain people, if in fact we did. I don't know whether we did promote certain people in October, but I, we did, the model would have--

we would have--we would have built the economic model and the leverage model assuming those people were going to be officers. And so therefore, other people, less productive people, would have to go. So it was a constant tension, when you're in a declining business, as to how many to promote, how many not to promote, so forth.

Q. But nonetheless, the desire to continue promoting people continues to exist, even in a declining environment?

A. Right, that's correct.

Q. Why is that?

A. Because if the young people in the organization don't see a future, they're going to leave, number one. Number two, the younger people in the organization looked at the officers in the organization in the mess that it was in. So the younger people, right or wrong, the younger people in the organization look at the officers and say, these are the people who put us in the position we're in now. They can't be that good. So a) in order to provide--keep the younger people from leaving, and b) presumably to refresh the officer group, you've got to have people coming in. So that's the reason for it.

  Ransom argues that Gray's statements that he sought to "keep the younger people from leaving" and wanted to "refresh the officer group" are direct evidence that CSC discriminated against him because of his age. We disagree. Gray's testimony does not create an inference that it fired Ransom because of his age. Rather, Gray testified about the "promote and eliminate" dynamic that had "always" been in play at the companies where he worked, including CSC, A.T. Kearney and Morgan Stanley. Under this dynamic, companies promote principals to officers and then continuously eliminate the worst performing officers to make room for future officers. These comments may be viewed as general observations about corporate behavior rather than as a direct explanation about Ransom's termination.

  Moreover, in this excerpt Gray was not speaking of younger officers, but of younger people in the organization who were not yet in the same high-level, high-salary position as Ransom. Ransom earned well into the six-figure range, and as a highly-paid executive was held to a higher standard--a standard that younger people in the company would someday hope to achieve. He apparently did not meet that standard--see infra at 7--and thus was fired.

While Ransom argues that we should interpret Gray's statements about "younger people" as really meaning "younger officers," it would be unreasonable to do so for two reasons. First of all, Gray did not say "younger officers" or even "younger employees"--he said "younger people in the organization." Because Gray's statement specifically identified the comparative class of employees--those younger people in the organization--it is unreasonable to read it in the contradictory fashion proffered by Ransom--as younger officers. Second, in context, it is unreasonable to interpret "younger people in the organization" as "younger officers" because as the above extensive excerpt demonstrates, albeit inartfully, Gray was juxtaposing officers with non-officers. The officers were supposed to set an example--a standard--that would encourage, not discourage, the younger people about their future in the organization.

Nor does the "refresh the officer pool" comment create a reasonable inference of age discrimination because the word "refresh" does not have an age-based connotation. See, e.g., Beatty v. Wood, 204 F.3d 713 (7th Cir. 2000) (employer's statement that they needed "new blood," does not in isolation evidence age-based discriminatory animus). Moreover, nothing in the record creates an inference that Gray meant that he wanted to "refresh" the officer pool with "younger" employees but rather with "newer" employees, including lateral hires. In fact, Ransom's own appointment as an officer only one year earlier, when he was 55, demonstrates that refresh meant new officers, not younger. Thus, we conclude that Gray's "refresh" comment does not reasonably create an impression of age-based animus, and therefore, Ransom's direct case fails. See, e.g., Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998) (the term "new blood" in the abstract simply means a change and is not direct evidence of age discrimination).

Ransom also attempts to prove his age discrimination case under the McDonnell Douglas burden-shifting method. Under this method, Ransom must establish a prima facie case of discrimination. If he does, the burden is for CSC to produce evidence of a legitimate non-discriminatory reason for Ransom's termination. Ransom, who still has the burden to prove discrimination, must then present evidence of pretext--that the proffered reason was not genuine. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 393 (7th Cir. 1998).

To establish a prima facie case of age discrimination, Ransom must present evidence that

he is in the protected class, i.e. age 40 or older; that he was performing his job satisfactorily; that he was discharged; and that similarly situated, substantially younger employees were treated more favorably. Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1141 (7th Cir. 1998). CSC argues that Ransom cannot establish either that he was performing his job satisfactorily, or that similarly situated significantly younger employees were treated more favorably, and thus that Ransom has failed to make a prima facie case. We will bypass the prima facie case (and thus this dispute) however, because as discussed below, CSC has presented evidence of a legitimate non-discriminatory reason for Ransom's termination, and there is no evidence of pretext. See Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998) ("When the defendant has proffered an explanation for termination that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met his prima facie case and instead decide to dismiss the claim because there is no showing of pretext.")./1

Specifically, CSC presented evidence that it terminated Ransom because he failed to meet CSC's expectations, and given the declining market, it needed to reduce the number of high-paid officers. CSC presented evidence that based on the six months during fiscal year 1997 that Ransom worked for CSC as an employee, he had a sales target of $2.5 million but only managed revenue of $242,338. Then in fiscal 1998 Ransom managed and sold only $250,848 for the first five months, while his target for the year was $6 million. Thus he was over $2 million short in 1997 and was way behind the pace for his annual target after five months in 1998. Ransom's failure to meet a sales quota is a legitimate, non-discriminatory reason supporting his termination. Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 572 (7th Cir. 1998).

Ransom responds by challenging the way CSC measured his performance. He argues that because he was not Vice President for the entire fiscal year 1997, CSC should take into account the revenues he managed for CSC while an independent contractor, and this would bring his total to $733,000. Ransom also argues that he negotiated contracts in August 1997 which totaled more than $1,930,000, and that CSC should also have considered these lucrative deals.

However, as this court has often stated, it does not sit as a super personnel department to review an employer's business decisions. McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992). And "[i]t is no business of a

court in a discrimination case to decide whether an employer demands too much of its workers." Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179-80 (7th Cir. 1997). In fact, it is not even the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. McCoy, 957 F.2d at 373. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie. Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir. 1996). Thus, Ransom's attack on the way CSC calculated his sales figures gets him nowhere as long as the company's reliance on those calculations was in good faith. See Green v. National Steel Corp., Midwest Div., 197 F.3d 894, 900 (7th Cir. 1999) ("It is 'a distraction' for [the plaintiff] to argue about the accuracy of [the employer's] assessment of her involvement in the alleged behavior because that is not the determinative issue."). See also, Bahl v. Roal Indemnity Co., 115 F.3d 1283, 1291-92 (7th Cir. 1997). Nor is it evidence of pretext that some members of the management team believed that Ransom should not yet be terminated. See Jordan v. Summers, 205 F.3d 337 (7th Cir. 2000) (concluding that the fact that one panel member rated the plaintiff as "excellent" does not prove pretext, but merely that the other panel members were mistaken). In short, Ransom has failed to present any evidence that CSC's proffered reason was a lie, and not merely a mistake, id., and therefore, Ransom has failed to present any evidence of pretext. Accordingly, CSC was entitled to summary judgment under the indirect method as well as the direct method.

III.  Conclusion

   Ransom's time as a high-paid CSC executive was short, but the shortened duration was not due to his age. Rather CSC presented evidence that its declining business environment required it to cut costs by eliminating some of its top executives whose performances did not justify their (corporate) existence. Because Ransom failed to present evidence of pretext, he cannot succeed on an indirect case under the ADEA. Ransom also failed to present direct evidence of age-based animus, and therefore he cannot succeed under the direct method. Accordingly, the district court properly granted CSC summary judgment. We AFFIRM.


FOOTNOTE

/1 Ransom pointed to two younger officers, Gary Moe and Sandra Tuck, who he contends performed worse than he, but who were not terminated. CSC contends that those officers were "not similarly situated." As to Moe, CSC asserts that he was not

similarly situated to Ransom because, even though his performance was poorer than Ransom's, he was a leader in the growing information technology practice and possessed expertise which CSC needed. CSC argues that Tuck was also not similarly situated because she was off work, or soon to be off work in connection with the adoption of a child, and CSC believed this to be an inappropriate time to terminate her. We need not decide whether these individuals are similarly situated to Ransom, however, because as discussed above, this issue only goes to the prima facie case, which we are bypassing because CSC has presented evidence of a legitimate non-discriminatory reason for terminating Ransom.